**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

In re:                                                    Chapter 7

     AARON GREENE                                Case No. 08-10472 (ALG)

               Debtor.

------------------------------------------------------------x

ANTONIO HERNANDEZ,

               Plaintiff,              Adv. Proc. No. 08-01148 (ALG)

      - against -

AARON GREENE,

               Defendant.

------------------------------------------------------------x

**POST-TRIAL MEMORANDUM**

A P P E A R A N C E S :

ROTHMAN, SCHNEIDER, SOLOWWAY & STERN LLP
Attorneys for Antonio Hernandez
 By: Robert A. Soloway, Esq.
100 Lafayette Street
Suite 501
New York, NY 10013

ROBERT S. LEWIS, ESQ.
Attorney for Aaron Greene
53 Burd Street
Nyack, NY 10960

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

      This adversary proceeding arises from a fight during which Aaron Greene

("Greene") stabbed Antonio Hernandez ("Hernandez"). Greene pled guilty to the crime

of assault in the second degree and was sentenced to a year in prison. Hernandez sued for

damages in State court, Greene followed with the above-captioned Chapter 7 bankruptcy

petition, and Hernandez countered with this adversary proceeding seeking to declare the

debt non-dischargeable on the ground that Greene acted "willfully and maliciously." 11

U.S.C.§ 523(a)(6). Greene argues that his actions were justified and that he acted in self-

defense. Upon the findings of fact and conclusions of law set forth below, the Court

concludes that Hernandez is entitled to a judgment that his damages are not discharged by

virtue of the bankruptcy filing.[1]

## BACKGROUND

The encounter took place on March 18, 2005, at around 5:00 a.m. Hours earlier,

Greene and his girlfriend had been patrons of a bar where Hernandez worked as a

security guard. Hernandez and Greene got into a dispute regarding a slice of pizza, and

Hernandez asked Greene to leave the premises. Once outside, near the door of the bar,

Greene had a physical altercation with other patrons of the bar. Although Greene does not

contend that Hernandez physically abused or threatened him in connection with that

altercation, Greene was convinced that Hernandez had provoked the incident, blamed

Hernandez for his misfortune and went home outraged. Greene also asserts that when he

got home he realized that part of his cell phone was missing and that he went back to the

bar to look for it. In any event, it is not contested that when Greene returned to the bar he

carried with him an eleven-inch butcher knife hidden in his coat pocket.

When Greene arrived at the bar he found it locked, but there were employees of

the bar or others who remained inside, and he waited across the street. Hernandez

---

[1] Hernandez seeks only a determination of non-dischargeability. He intends to litigate his damages in State court.

2

appeared at around 4:20 a.m., accompanied by a fellow employee. Hernandez and his colleague began to walk together toward their respective apartments and soon came upon Greene. Hernandez noticed that Greene had his hand in his coat pocket and seemed to have something concealed there, but he did not challenge Greene at that time. Greene told Hernandez, in any event, that his cell phone had been lost as a result of the encounter outside the bar and asked Hernandez whether he had it. Hernandez stated he knew nothing about the cell phone and continued to walk toward his apartment, still accompanied by his colleague. Greene, who says he was unconvinced by what Hernandez said, followed them.

After a few blocks, Hernandez challenged Greene and demanded that he stop following them. Greene claims that he again inquired about his cell phone, and again Hernandez told him he did not have it. The pursuit continued. Minutes later, Hernandez confronted Greene once more and warned him that the stalking had to cease. Greene, undeterred, continued to follow. Shortly thereafter, Hernandez and his friend hid in an alley in an attempt to lose Greene; they did not want him to follow them to their apartments and learn where they lived. Greene, aware of their hiding place, watched them from an adjacent, dark, vacant lot.

Hernandez and his friend then resumed their walk home after concluding that they had lost Greene; however, when passing by the adjacent lot where Greene waited, Hernandez heard a sound. As it was dark, Hernandez pointed in the direction of the sound with a pocket flashlight he was carrying. He saw Greene and entered the vacant lot to confront him. Greene walked toward Hernandez. When they were three feet away from each other, Hernandez concluded that Greene was trying to pull something out his coat

pocket and struck Greene once on the side of the face.[2] Greene fell on his knees and

Hernandez jumped or fell on top of him. At the same time, Hernandez's friend shouted

that Greene had a knife; however, Greene had already stabbed Hernandez once in the

right side of the abdomen.  Green then fled the scene and managed to escape, although

Hernandez chased him for several blocks.

Hernandez spent two days in the hospital as a result of the incident. Greene was

apprehended by the police, charged for the stabbing and, after pleading guilty to assault

in the second degree under N.Y. Penal Law §120.05[02], was sentenced to and spent a

year in prison.[3] Hernandez sued Greene for damages in State court, but on the eve of a

jury trial, Greene filed the above-captioned Chapter 7 bankruptcy petition and the suit

was stayed. Hernandez subsequently commenced this adversary proceeding seeking a

determination that any damages would be non-dischargeable under § 523(a)(6) of the

Bankruptcy Code on the ground that Greene had acted willfully and maliciously.

Hernandez contends that Greene's guilty plea and conviction are determinative on the

issue of willfulness and malice. Nevertheless, while Hernandez did not waive the point,

both parties agreed that the issues would be tried before the Court, and a one-day trial

was held on October 27, 2008. At trial, Greene contended in substance that his actions

were justified and that he acted in self-defense.

For the reasons and upon the findings and conclusions set forth herein, the Court

concludes that Hernandez's claim is non-dischargeable under § 523(a)(6).

---

[2] Hernandez claims he slapped Greene. Greene believes he was punched. This factual dispute is irrelevant to the Court's holding.

[3] At the allocution in the state criminal proceeding, Greene was asked whether he understood that by entering a guilty plea to assault in the second degree under N.Y. Penal Law § 120.05[2] he was admitting that he intentionally stabbed Hernandez. Greene answered "yes."  (Plea Hr'g Tr. 5:20-25 – 6:1, Oct. 21, 2005) (attached as Exhibit 1 to Joint Pretrial Order.)

## DISCUSSION

### I. Section 523(a)(6): the Standard

A bankruptcy discharge covers all debts arising before the petition is filed except as provided in § 523 of the Bankruptcy Code. 11 U.S.C. § 727(b). Section 523(a)(6) exempts from discharge any debt "for willful and malicious injury by the debtor to another entity" (i.e., person). 11 U.S.C. § 523(a)(6); *see also* 11 U.S.C. § 101(15). "The terms 'willful' and 'malicious' are separate elements, and both elements must be satisfied." *Krautheimer v. Krautheimer (In re Krautheimer)*, 241 B.R. 330, 341 (Bankr.S.D.N.Y.1999); *see also 4 Collier on Bankruptcy* ¶ 523.12[2] (15th ed.). A willful injury entails a deliberate or intentional act directed at causing the ensuing injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998). On the other hand, a malicious injury is one that is "'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.'" *Ball v. A.O. Smith Corp*, 451 F.3d 66, 69 (2d Cir. 2006), quoting *In re Stelluti*, 94 F.3d 84, 87 (2d Cir. 1996).  "Malice may be implied 'by the acts and conduct of the debtor in the context of the surrounding circumstances.'" *Ball*, 451 F.3d at 69, quoting *In re Stelluti*, 94 F.3d at 88. As one Court has stated, the malicious element of § 523(a)(6) "adds the absence of just cause or excuse." *In re Garner*, 56 F.3d 677, 681 (5th Cir. 1995), *abrogated on other grounds by In re Caton*, 157 F.3d 1026 (5th Cir.1998).

The Supreme Court has held that the standard of proof in a non-dischargeability action is preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 287-88 (1991). Nevertheless, the law favors discharge and the ability of a debtor to obtain a fresh start. *See Cazenovia College v. Renshaw (In re Renshaw)*, 222 F.3d 82, 86 (2d Cir. 2000),

citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934). It is thus well-accepted that all

exceptions to discharge are construed narrowly. *See Andy Warhol Found. for Visual Arts,*

*Inc. v. Hayes (In re Hayes)*, 183 F.3d 162, 167 (2d Cir. 1999).

As noted above, Hernandez relies on Greene's guilty plea as having conclusively

established the malicious and willful elements of § 523(a)(6). Greene contends that a

defendant in a criminal case has many reasons to accept a plea bargain and that his plea

should not preclude him from presenting his defenses in this Court. Therefore, the Court

must first determine whether the prior criminal proceedings and the guilty plea are

determinative as to the issues at hand.

## II. Section 523(a)(6) and Issue Preclusion

Under the doctrine of issue preclusion or collateral estoppel, issues litigated and

decided in a prior proceeding involving a party to a second proceeding and incorporated

in a judgment preclude re-litigation of the same issues in the second proceeding.

*Parklane Hosiery Co. v. Shore***,** 439 U.S. 322, 327 (1979). The following conditions must

be met before preclusive or collateral estoppel effect can be given:

> (i) the issues in both proceedings must be identical; (ii) the issue in the
> prior proceeding must have been litigated and decided; (iii) there must
> have been a full and fair opportunity for the party against whom
> preclusion is sought in the second proceeding to litigate the issue in the
> prior proceeding; and (iv) the issue previously litigated must have been
> necessary to support a valid and final judgment on the merits.

*Gelb v. Royal Globe Insurance Co.,* 798 F.2d 38, 44 (2d Cir. 1986). Bankruptcy courts

frequently apply the doctrine of issue preclusion in dischargeability proceedings. *Grogan*

*v. Garner*, 498 U.S. at 284 (1991). Indeed, there are numerous cases holding that a guilty

plea in a criminal prosecution satisfies the standards in § 523(a)(6). *See Deere & Co. v.*

*Dickerson (In re Dickerson)*, 372 B.R. 827 (Bankr. N.D. Miss. 2007); *Gray v. Gray (In re*

6

*Gray)*, 322 B.R. 682 (Bankr. N.D. Ala. 2005); *Erickson v. Roehrich (In re Roehrich)*, 169

B.R. 941 (Bankr. D. N.D. 1994); *Blackman v. Gaebler (In re Gaebler)*, 88 B.R. 62 (E.D.

Pa. 1988).

When a prior judgment has been rendered in a State court, its preclusive effect in

a federal proceeding depends on the law of the State that rendered the judgment. 28

U.S.C. §1738; *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). If

the State court would give preclusive effect to the judgment, a federal court will also do

so. In the State of New York, a guilty plea is accorded the same preclusive effect as a

conviction after a trial. *Merchants Mut. Ins. Co. v. Arzillo*, 98 A.D.2d 495, 506, 472

N.Y.S.2d 97 (2d Dep't 1984). Although the elements of the crime have not been litigated,

"the issues have necessarily been judicially determined by the plea." *Id.* at 505.

Furthermore, a defendant pleading guilty has had a full and fair opportunity to litigate his

case, even though he has elected not to contest the accusations. *Id* at 506. He "should not

expect the courts to look behind convictions based on such pleas in order to relieve [him]

from civil consequences which may follow. As long as a guilty plea stands, a defendant is

guilty and cannot be heard to say otherwise." *Id*; *see also Gerney v. Tishman Const.

Corp.*, 136 Misc.2d 1051, 1056, 518 N.Y.S.2d 564 (Sup. Ct. N.Y. Co. 1987).[4] Since New

York law treats a guilty plea like a conviction after trial, and since there is no contention

Greene did not have an opportunity to contest the criminal charges, conditions (ii) and

(iii) of the issue preclusion doctrine, as formulated by the *Gelb* case and quoted above,

have been satisfied.

---

[4] Guilty pleas in federal criminal prosecutions are afforded the same preclusive effect by federal courts in
the Second Circuit. *La Magna v. U.S.,* 646 F.2d 775, 778 (2d Cir. 1981); *U.S. v. Podell,* 572 F.2d 31, 35 (2d
Cir. 1978).

Conditions (i) and (iv), as quoted above, also require that the Court independently determine whether the statute under which a person was convicted encompasses the same standard of proof and the same malicious and willful elements as § 523(a)(6) and whether malice and willfulness are elements of the crime. *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 157-158 (1963). *In re Spector*, 22 BR 226, 231(Bankr.N.D.N.Y.1982). The standard of proof under § 523 is preponderance of the evidence. *Grogan v. Garner*, 498 U.S. at 279 (1991). In criminal proceedings there is a more rigid standard of beyond reasonable doubt, *Brinegar v. U.S.*, 338 U.S. 160, 174 (1949), and thus the standard of proof element is satisfied. As to the existence of malice and willfulness, New York Penal Law § 120.05 [2] provides as follows:

> a person is guilty of assault in the second degree when…with intent to cause physical injury to another person, he causes such injury to such person…by means of a deadly weapon or a dangerous instrument.

A conviction under the statute requires, *inter alia*, a finding that the defendant, without excuse or justification, intentionally caused the ensuing injury. *People v. Rifenburgh*, 29 A.D.2d 897 N.Y.S.2d 331 (3d Dep't 1968); *see also* Penal Law § 1.05 [1]. Hence, not only are the maliciousness and willfulness elements of § 523(a)(6) encompassed within the relevant criminal statute and the judgment of conviction, but the elements of the two legal statutes are practically identical. Thus, the first and fourth factors set forth above are fully satisfied.

In sum, issue preclusion applies under the facts of this matter, with the result that Greene's guilty plea and subsequent conviction conclusively establish that he acted maliciously and willfully. Therefore, any debt for damages arising from the stabbing is non-dischargeable under § 523(a)(6).

### III. Section 523(a)(6): the Results at Trial

As noted above, notwithstanding Greene's guilty plea, the Court tried the issues *de novo* and took the testimony of both Hernandez and Greene. For the following reasons, the same result follows even if issue preclusion were inapplicable in the instant case.

As stated above, § 523(a)(6) has two elements: the act must be willful and malicious. The willful element is satisfied when a person deliberately causes an injury to another, while the malicious prong requires that such action be unjustified or without just cause.

There was no serious dispute at trial that Greene acted willfully. In fact, in his pretrial pleadings (Joint Pretrial Order ¶ 6), and later at trial, Greene defended on the ground that he had stabbed Hernandez in self-defense. This is tantamount to an admission that Hernandez's injury was willfully caused. *See In re Taylor,* 322 B.R. 306, 309 (Bankr. N.D. Ohio 2004) (raising the self-defense justification in effect constitutes an admission that the underlying act was done willfully).

The facts at trial also establish that Greene acted maliciously. His self-defense claim, which would have provided justification or cause for his willful action, fails short under both federal and State standards. In federal courts, the law pertaining to self-defense is a matter of federal common law. *United States v. Desinor*, 525 F.3d 193, 199 (2d Cir. 2008), citing *United States v. Butler*, 485 F.3d 569, 572 (10th Cir. 2007). In *Butler,* the court explained that a claim of self-defense requires a party to show the following: (i) that he was under an unlawful, imminent and impending threat of death or serious bodily injury; (ii) that he had not recklessly or negligently placed himself in such

a situation; (iii) that he had no reasonable, legal alternative to violating the law—a chance both to refuse to do the criminal act and to avoid the threatened harm; and (iv) that a direct causal relationship would have been reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.

Greene's actions fail the four prongs of the self-defense doctrine as construed under federal common law. First, he was not under imminent threat of death or serious bodily injury since Hernandez was unarmed and only threw one punch. Second, Greene placed himself in the situation by openly and defiantly stalking Hernandez, late at night. Third, once Hernandez entered the vacant lot, Greene could have avoided any confrontation by retreating instead of confronting Hernandez. Greene also did not need to stab Hernandez with an 11-inch butcher knife to repel a single punch. Fist-fighting, screaming for help, running away and perhaps even asking Hernandez to refrain from further attacks were among the many alternatives Greene had available before using the knife he had brought with him, concealed in his coat. Finally, there is no reasonable causal relationship between Greene's act and the avoidance of the threatened harm.

In determining whether a plea of self-defense can be maintained, this Court can also "look to state court decisions for guidance" on the issue of self-defense. *United States v. Desinor,* 525 F.3d 193, 199 (2d Cir. 2008); *In re Harwell*, 349 B.R. 502, 508 (Bankr. N.D. Ohio 2006). Under New York law, a person is entitled to use physical force to the extent he reasonably believes it to be necessary to defend himself from unlawful, ordinary physical force. N.Y. Penal Law § 35.15(1).[5] A punch is considered ordinary,

---

[5] N.Y. Penal Law § 35.15 defines the justification defense in relevant part as follows:
> 1. A person may, subject to the provisions of subdivision two, use physical force upon
> another person when and to the extent he or she reasonably believes such to be necessary

physical force. *People v. Bradley*, 297 A.D.2d 640, 641, 747 N.Y.S.2d 48 (2d Dept. 2002). A person may only use deadly, physical force if he reasonably believes it is necessary to repel deadly physical force. N.Y. Penal Law § 35.15(2)(a). Deadly physical force is defined as "physical force that, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." N.Y. Penal Law § 10.00(11). As a matter of law, in the State of New York, "the use of a knife constitutes deadly physical force.'" *Steele v. Laclaire*, 2007 WL 2982240, *6 (S.D.N.Y. Oct. 10, 2007), citing *People v. Jones,* 24 A.D.3d 815, 816, 805 N.Y.S.2d 169 (3d Dep't 2005); *see also People v. Mothon,* 284 A.D.2d 568, 569, 729 N.Y.S.2d 541 (3d Dep't 2001). Therefore, unless the facts show that Greene reasonably believed that Hernandez was about to use deadly physical force against him, his self-defense justification fails under New York law.

New York courts have applied a test, combining both subjective and objective elements, to determine whether the use of deadly physical force is reasonably warranted in a given situation. *Steele,* 2007 WL 2982240, at *7. Under the subjective prong, "the fact finder must first determine if defendant believed physical force (or deadly physical force) was necessary to defend against the imminent use of physical force (or deadly physical force)." *In re Y.K.*, 87 N.Y.2d 430, 434, 639 N.Y.S.2d 1001 (1996). Under the objective prong, "the fact finder must next consider [whether] . . . a reasonable person

---

to defend himself, herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person . . . .

2. A person may not use deadly physical force upon another person under circumstances specified in subdivision one unless:

(a) The actor reasonably believes that such other person is using or about to use deadly physical force . . . .

would have held that belief under the circumstances which existed." *Id.* Applying these tests, "New York courts have held that where a victim was unarmed, no reasonable defendant could have believed that he or she was in imminent danger of the use of deadly physical force." *Steele*, 2007 WL 2982240, at \*8. In *People v. Torres*, 252 A.D.2d 60, 65, 686 N.Y.S.2d 375 (1st Dept. 1999), the Court held as a matter of law that a victim is not justified in using a knife against an unarmed attacker who only threw a first punch.

At trial, Greene claimed he did not know whether Hernandez was armed. Greene also stated that he was blinded by Hernandez's flashlight before the fight, and, therefore, did not know whether Hernandez had a weapon. Having heard all of the testimony and observed both witnesses, these claims cannot be credited. Greene had stalked Hernandez for a half hour - from approximately 4:30 to 5:00 a.m. - through largely deserted streets. Hernandez made every reasonable effort to avoid Greene and not to confront him. Greene's assertion that he was not stalking Hernandez but was merely following in the hope that Hernandez would drop or throw Greene's cell phone in the trash is incredible. Although Hernandez had had a prior altercation with Greene in the bar, nothing in that incident or in their later encounters could have caused Greene to reasonably believe either that Hernandez had taken his cell phone or that Hernandez was armed.

Moreover, although Hernandez was the initial aggressor in the fight, he only punched Greene after great provocation. The evidence as a whole demonstrates that Greene could not have reasonably believed that Hernandez was using or about to use deadly, physical force. *See People v. Reynoso*, 73 N.Y.2d 816, 818, 537 N.Y.S.2d 113 (1988) (finding defendant was not justified in using deadly physical force to repel an

attack when he did not know whether plaintiff was armed). Greene's self-defense

argument is without merit under State as well as federal law.

## **CONCLUSION**

Hernandez is entitled to a judgment of non-dischargeability under § 523(a)(6) of

the Bankruptcy Code and may settle a judgment on five days' notice.


Dated: New York, New York
       December 10, 2008


        */s/ Allan L. Gropper*
        UNITED STATES BANKRUPTCY JUDGE